```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| MARY BLANEY,<br><br>        *Plaintiff*,<br><br>    v.<br><br>SCREENER MIKE T5654 OF 262-HELP, et al.,<br><br>        *Defendants*. | No. 24-cv-05122 (MEF)(CLW)<br><br>**OPINION and ORDER** |

**Table of Contents**

I.   **Background**
        **A.   The Allegations**
        **B.   The Lawsuit**
        **C.   The Motion**
        **D.   General Principles**
        **E.   The Elements**
II.  **The Health Department**
III. **The Ambulance Corps**
IV.  **The Hospital**
V.   **Conclusion**

\*   \*   \*

**I.   Background**

   **A.   The Allegations**

The key allegations here are as follows.

A Pennsylvania woman[1] went to local police in New Jersey to make a report.  See Complaint at 3, 5.

After speaking with her, the police officers called an ambulance and had the woman transported to a nearby hospital.  See id. at 7.[2]

The woman was held at the hospital for a week.  See id.  While there, she was given at least one medication[3]; this later caused harmful side effects.  See id. at 7-8.

   **B.   The Lawsuit**

In light of the above, the woman filed this lawsuit.  She is referred to from here as "the Plaintiff."

The Plaintiff's lawsuit makes two federal claims.

A Fourth Amendment claim, on the argument that being taken to the hospital and detained there amounted to an "unreasonable . . . seizure."  See id. at 3.  And also a "civil

---

[1]   Mary Blaney.

[2]   The Complaint makes clear that the Plaintiff was treated by those around her as if she was having an acute health episode. See Complaint at 7; see also Opposition Brief at 10, 16. Whether she was, or whether the officers and others genuinely believed she was --- those are not questions for now.  At this stage, the Court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).

[3]   Klonopin.  See Complaint at 7.  Klonopin is the name under which clonazepam is marketed.  Clonazepam is used, among other things, "to reduce anxiety in the treatment of panic disorder." Clonazepam, Merriam-Webster, https://www.merriam-webster.com/dictionary/clonazepam (last visited Jan. 15, 2025).

2

rights" claim, based on alleged discrimination by various people in connection with the events sketched out above.[4]  See id.

In addition, the Plaintiff presses a state-law medical-malpractice claim.  See id. at 3. The gist: she received substandard medical treatment, and has suffered as a result.  See id. at 1, 8.

### C.   The Motion

Three of the Defendants have moved to dismiss the Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).

These are the Bergen County Department of Health Services, the Bergenfield Volunteer Ambulance Corps, Inc., and the Bergen New Bridge Medical Center.[5]

These Defendants' motions to dismiss are before the Court.

### D.   General Principles

In the Third Circuit, motions to dismiss are analyzed in three steps.

First, a court "must tak[e] note of the elements [a] plaintiff must plead to state a claim."  Connelly v. Lane Constr. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).

Second, the court must identify those allegations in the complaint that are merely conclusory and set them aside as irrelevant to the analysis.  See id.

And third, the court must determine whether the remaining allegations "plausibly give rise to an entitlement to relief."  Id.

---

[4]  The Complaint does not itself cite a particular law in relation to the Plaintiff's civil-rights claim.  See Complaint at 3.

[5]  The other defendants have not moved to dismiss.  They are named in the Complaint as: (1) Screener Mike T5654 of 262-HELP, (2) Police Officer Enriquez, (3) Police Lieutenant Ramos, (4) T/C Kneisler, (5) Police Officer Timothy Knapp, Jr., (6) Bergenfield Police Department, and (7) Nutley Police Department.

\*   \*   \*

Here, the Plaintiff is not represented by a lawyer. So the Court must "liberally construe" her complaint. See Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). But "pro se litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).

### E.   The Elements

Take now the elements of the Plaintiff's claims. See Connelly, 809 F.3d at 787 (a court "must [first] take note of the elements [a] plaintiff must plead to state a claim") (cleaned up).

\*   \*   \*

As to her first claim, under the Fourth Amendment, the Court assumes that the Plaintiff intended to invoke 42 U.S.C. § 1983.

"[A] § 1983 plaintiff [must] prove two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights . . . secured by the Constitution . . . of the United States." Schneyder v. Smith, 653 F.3d 313, 319 (3d Cir. 2011).

Here, the Plaintiff alleges she was seized in violation of the Fourth Amendment, see Complaint at 3, which secures the right to be free of "unreasonable . . . seizures." U.S. Const. amend. IV.

That seizure was apparently connected with what, as alleged, seems to have been a temporary involuntary medical commitment. See footnote 2.

Under the Fourth Amendment, such seizures must be "reasonable under the circumstances." Doby v. DeCrescenzo, 171 F.3d 858, 871 (3d Cir. 1999); Catlett v. N.J. State Police, 2015 WL 9272877, at \*4 (D.N.J. Dec. 18, 2015) (holding that the "fundamental inquiry" of a Fourth Amendment claim related to involuntary commitment is "whether the government's conduct was objectively reasonable under the circumstances").

\*   \*   \*

4

The Plaintiff's second claim is premised on an alleged "civil rights" violation --- that she was discriminated against her based on gender, race, and ethnic background. See Complaint at 3.

As to this claim, the Complaint points to no particular law.[6]

In this circumstance, the Court takes the pro se Plaintiff to be raising a § 1983 claim based on an alleged violation of the Constitution's Equal Protection Clause.

"To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, [a plaintiff] must prove the existence of purposeful discrimination. . . .  They must demonstrate that they received different treatment from that received by other individuals similarly situated." Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F. 3d 176, 196 (3d Cir. 2009).

\*   \*   \*

The Plaintiff's third claim is for medical malpractice.

To meet the elements of a medical-malpractice claim under New Jersey[7] law, a plaintiff "must prove [1] the applicable standard of care; [2] that a deviation has occurred; and [3] that the

---

[6] At one point in her briefing, as in the cover sheet attached to the Complaint, the Plaintiff invokes the Civil Rights Act of 1964.  See Opposition Brief at 1; Complaint, Attachment 1; see also footnote 4.  But the Act would seem to be an especially unnatural fit for the allegations in the Complaint.

[7] The Defendants assume that New Jersey law applies, and the Plaintiff does not contest this.  See, e.g., Motion to Dismiss (ECF 11) at 10, 12-14; Motion to Dismiss (ECF 13) at 7; Motion to Dismiss (ECF 15) at 1.  This is enough to establish that New Jersey law applies here in light of the allegations in this case, of a set of torts allegedly committed in New Jersey.  Cf. Badalamenti v. Resideo Techs., 2024 WL 4661010, at *3 n.5 (D.N.J. Nov. 4, 2024); Liberty Mut. Fire Ins. Co. v. EG Munoz Constr., LLC, 2024 WL 4635392, at *2 n.4 (D.N.J. Oct. 31, 2024); Lopez v. Corozal Auto Repair Inc., 732 F. Supp. 3d 383, 388-89 (D.N.J. 2024).

5

deviation proximately caused the injury." Verdicchio v. Ricca, 179 N.J. 1, 23 (2004) (cleaned up).[8]

\* \* \*

With this background in mind, look now to the Plaintiff's allegations against each Defendant that has moved to dismiss.

## II.   The Health Department

Start with the Bergen County Department of Health Services ("Health Department").

The Complaint names the Health Department as a defendant. See Complaint at 3. But it says nothing about what it allegedly did. See id. at 4-8. There are therefore no allegations as to how the Health Department may have been involved in the underlying events here.

A "complaint must provide some factual basis to support a claim." Ashton v. City of Uniontown, 459 F. App'x 185, 190 (3d Cir. 2012). As to the Health Department, this one does not.

Therefore, the Complaint against the Health Department must be dismissed. See generally Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 56 (2005) (describing "the ordinary default rule that plaintiffs bear the risk of failing to prove their claim").

## III.  The Ambulance Corps

Turn now to the Bergenfield Volunteer Ambulance Corps ("Ambulance Corps").

The only allegation about ambulances is this: "the Bergenfield Police called an ambulance and sent [the Plaintiff] to the psych addiction ward at [the hospital]." Complaint at 7.

\* \* \*

---

[8] The pleading standards for medical malpractice under New Jersey law may vary depending on whether the claim is brought in federal or state court. See Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C., 692 F.3d 283, 303 (3d Cir. 2012); see also Sellow v. Nwachukwu, 2023 WL 157432, at *3 n.1 (D.N.J. Jan. 11, 2023) (applying Nuveen). But the point is not relevant for now.

6

This allegation does not clear the bar for a medical-malpractice claim. It does not say what Ambulance Corps personnel did, or what happened in the ambulance. Without such allegations, there is no reason to think that the Ambulance Corps injured the Plaintiff, let alone that it deviated from the "applicable standard of care." Verdicchio, 179 N.J. at 23.

Can the Ambulance Corps be liable simply for transporting a patient to a hospital where she was then subject to alleged medical malpractice? Because the Plaintiff is pro se, the Court has searched for cases that suggest this. But the Court has found none.

*   *   *

Next, consider the § 1983 claim for denial of equal protection.

The Complaint only says that the Plaintiff was moved to the hospital in an ambulance. But it says nothing about her treatment being impacted in any way by race, gender, or ethnicity, as it must. See Chambers, 587 F. 3d at 196.

*   *   *

Take, finally, the Fourth Amendment claim against the Ambulance Corps.

To make this claim work, the Plaintiff must allege, among other things, that the Ambulance Corps violated her Fourth Amendment rights "while acting under color of state law." Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); see also id. ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law.").

"[A]cts of a state or local employee in her official capacity will generally be found to have occurred under color of state law." Barna v. City of Perth Amboy, 42 F.3d 809, 816 (3d Cir. 1994).

And where a defendant is a private person ---

> [T]o determine whether state action exists: [ask] (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials;

7

> and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009) (cleaned up).

In a § 1983 suit, the plaintiff bears the pleading burden on the "under color of state law" requirement. See Groman, 47 F.3d at 638.

The Plaintiff here has not carried it.

The Complaint does not allege that the Ambulance Corps was operated by state or municipal employees, or that it is part of any state or municipal government. And if the Ambulance Corps is a purely private entity, the Complaint does not set out allegations under Kach, 589 F.3d at 646, that shed meaningful light on whether the Ambulance Corps might count as a state actor.

\* \* \*

In light of the above, the various claims against the Ambulance Corps must be dismissed.

### IV.  The Hospital

Finally, look to the Bergen New Bridge Medical Center ("Hospital").

The allegations against the Hospital are more detailed than the others. The Plaintiff claims that, after being transported there, she "was not examined or interviewed by a doctor [at the Hospital]. [She] was just detained in the emergency room and then brought upstairs and put on a ward. [She] was detained for a week on this ward without seeing a doctor and was forced to take highly addictive medication that [she] suffered from withdrawal from." Complaint at 7. She alleges this treatment injured her physically and psychologically. See id. at 8.

\* \* \*

The Plaintiff's constitutional claims against the Hospital fail mainly for the same reasons that those same claims fail as to the Ambulance Corps.

8

The Plaintiff's § 1983 equal-protection claim does not work because there are no allegations that the Hospital mistreated her in light of her race, gender, or any other characteristic.

And both the § 1983 claims against the Hospital, for denial of equal protection and for violations of the Fourth Amendment, fail because the Plaintiff has not adequately alleged that the Hospital was acting under color of state law. See Groman, 47 F.3d at 638; Kach, 589 F.3d at 646.

\*   \*   \*

Turn now to the Plaintiff's claim against the Hospital for medical malpractice.

Elaborating on the elements of a medical-malpractice claim, the New Jersey Supreme Court has held that "[a] physician must act with that degree of care, knowledge, and skill ordinarily possessed and exercised in similar situations by the average member of the profession practicing in the field." Aiello v. Muhlenberg Reg'l Med. Ctr., 159 N.J. 618, 626 (1999).

And there can be no doubt that these standards are not met when a person is repeatedly given psychotropic medication, see footnote 3, without first having been examined by a medical professional of some sort. See Complaint at 7. These are the allegations in the Complaint, see id., and for now they must be accepted as true. See footnote 2. They state a medical malpractice claim.

## V.   Conclusion

The motions at ECF 11 and 15 are granted. The Plaintiff's claims against the Health Department and the Ambulance Corps are dismissed without prejudice.

The motion at ECF 13 is granted in part. The Plaintiff's equal-protection and Fourth Amendment claims against the Hospital are dismissed without prejudice. The motion is denied as to the Plaintiff's medical-malpractice claim.

IT IS on this 15th day of January, 2025, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.